[Civ. No. 23627.    Second Dist., Div. One.    Sept. 10, 1959.]

RUSSELL MASON, Appellant, v. MARGARET PEASLEE
et al., Respondents.

*Assigned by Chairman of Judicial Council.

Glenn B. Soelberg for Appellant.

Howser, Coughlin & Schmitt and James J. Coughlin for Respondents.

NOURSE, J. pro tem.*—Plaintiff appeals from a judgment of dismissal entered after the trial court had granted defendant's motion for a judgment of nonsuit.[1]

The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.

The action is one brought to recover upon a promissory note executed by the defendant. After offering the note in evidence and proving its execution by the defendant and that the note had not been paid, the plaintiff did not rest as he

---

*Assigned by Chairman of Judicial Council.

[1]The court made written findings of fact and conclusions of law. In so doing the court misconceived its function in passing upon a motion for nonsuit. It did not, in ruling upon the motion, act as a judge of the facts but solely as a judge of the law, that is, as to whether the facts proven required a judgment for the defendant as a matter of law. (*Estate of Baird*, 198 Cal. 490 at 506 [246 P. 324]; *Lasry* v. *Lederman*, 147 Cal.App.2d 480 at 489-490 [305 P.2d 663].)

might well have done but proceeded to offer evidence to show the consideration for the note. In substance this evidence, viewed in the light most favorable to plaintiff, established the following facts:

The plaintiff was engaged in business as a sound engineer. He had been in that business for 18 years. The plaintiff was not licensed as a private investigator under the provisions of division III of chapter 11 of the Business and Professions Code (§ 7500 et seq.); he had never held himself out as being so licensed and had been advised by the Bureau of Private Investigators and Adjusters that the business he was engaged in did not require him to be so licensed; the work in which he was engaged was the recording of proceedings of meetings of boards of directors, conventions, speeches, business meetings, and personal conversations; he did this work not only for corporations, attorneys and individuals but for police departments, sheriff's offices and the federal government; in many instances the parties whose conversations were recorded did not know that a record was being made; he made these recordings by the installation of microphones and the transmission from the microphone to a recording device of the sounds picked up by the microphones through radio waves or through electric currents transmitted over wires; he was not listed in the classified section of the telephone directory as a private investigator but as having recording equipment for rent; he was first contacted by the defendant Mrs. Peaslee over the telephone; she stated to the plaintiff that she wanted to rent recording equipment to place in her husband's office; she wanted equipment that would work automatically; plaintiff advised her that as her husband's office was on a very busy street his equipment would not function automatically but that his recording device would have to be operated by him or one of his assistants. Thereafter the plaintiff met the defendant Peaslee and told her that it would be necessary to put a microphone in the office of her husband and to pick up the conversations that took place and record them in plaintiff's truck which was equipped with the recording devices. They discussed what plaintiff would charge and plaintiff quoted the defendant the price of $100 to $125 per day for the use of his equipment and services of someone to operate the recording devices, the price depending upon whether plaintiff could secure a connection to electric wires and obtain power or whether it would be necessary for him to use batteries for that purpose. Thereafter defendant took the plaintiff to

her husband's office and showed him where to install the microphones; plaintiff installed the microphones and defendant paid him $300 on account. Thereafter for a period of 11 or 12 days plaintiff recorded conversations that took place in the office of defendant's husband and on these days plaintiff operated the recording equipment and defendant listened to the conversations and monitored them. Defendant Peaslee told plaintiff that she wanted to record the conversations in the office to determine whether the employees of her husband were dishonest and secreting money or whether her husband was dishonest and secreting money. She also told him she was concerned over the question of whether her husband was a sex pervert.

After the completion of the recording in the office, defendant Peaslee told plaintiff that her husband was going to Florida in the company of another man and she desired him to go to Florida and record conversations between her husband and this man there. Plaintiff went to Florida. While there at the direction of defendant he employed a firm of private detectives to locate defendant's husband and installed a microphone in Mr. Peaslee's bedroom. He did not record any conversations. Plaintiff paid out of his own pocket monies for the entire expenses of the trip including the charges of the private investigators employed by him there.

On his return at defendant's request, he fixed a microphone and transmitting device to her person so that any conversations between herself and her husband might be recorded and set up a recording device for two nights in a garden house at the residence of defendant and her husband. Defendant advised plaintiff that she desired the conversations of her home recorded as she had been beaten by her husband and wanted evidence of his acts to use in a divorce or separate maintenance action. No recordings were made. Plaintiff at the same time, and at defendant's direction, placed microphones in the living room and bedroom of defendant's home and installed an induction coil which would enable her to have a record made of telephone conversations with her husband.

At the conclusion of his services he prepared an itemized bill on which there were six items listed and the total of these items, being $3,280.90. After this bill was presented and approved by defendant she executed the promissory note in the sum of $3,280.90 sued upon.

The motion for nonsuit was made on the sole ground that

the services performed by the plaintiff were those of a private investigator and that as he did not have a license from the state as such, the contract with the plaintiff was an illegal one and that the sole consideration for the note being the services performed under this contract, the note was unenforceable. In passing upon the motion the court found as a fact that the consideration for the note sued upon was for services rendered by the plaintiff in securing evidence to place before a court of law and that in rendering said services plaintiff acted as a private investigator and he not being licensed as such, the contract of the defendant to pay for his services was illegal and void.

■ We have reached the conclusion that the judgment cannot be sustained. Section 7520 of the Business and Professions Code prohibits four things: (1) engaging in a business regulated by the statute, (2) acting or assuming to act as a licensed person without being so licensed, (3) representing himself to be a licensee without being so licensed, and (4) false representation by a person that he is employed by a licensee. There is no evidence whatsoever that plaintiff acted or assumed to act as a licensee, represented himself to be either a licensee or represented himself to be an employee of a licensee. The single transaction with the plaintiff did not constitute engaging in business for the word to "engage" connotes frequency of action. (*City of Los Angeles* v. *Cohen*, 124 Cal.App.2d 225 at 228 [268 P.2d 183].) While there was evidence that plaintiff had for others secretly recorded conversations of persons and had done so for law enforcement agencies and it might be inferred that this was done for the purpose of gathering evidence for use "before any court, board, officer, or investigating committee" (Bus. & Prof. Code, § 7521), yet the presumption is that plaintiff acted lawfully and that he did not record conversations for that purpose. (Code Civ. Proc., § 1963, subds. 1, 19 and 33.) The court in passing upon the motion for nonsuit was obligated to give plaintiff the benefit of these presumptions and could not draw the inference that plaintiff's work in recording conversations for others was done in such a manner as to constitute doing business as a private investigator or that the work was done in contravention of section 7521 of the Business and Professions Code. (*Lasry* v. *Lederman*, *supra*, 147 Cal.App. 2d 480 at 488-490.)

Further, the evidence was such as to uphold a finding that

plaintiff did not himself conduct any investigation[2] but that he merely furnished to the defendant the devices with which she could carry on her own investigation and that in operating the devices he acted not as an investigator but as one employed by the defendant to render technical aid to her in operating the devices which she had rented from him.

As the trial court in acting upon the motion for nonsuit was not functioning as a finder of facts and as the evidence would support the findings we have suggested, the court clearly erred in granting the motion.

The judgment is reversed.

Fourt, Acting P. J., and Lillie, J., concurred.

[2]The noun ''investigation'' means the process of inquiring into or tracking down through inquiry, and the verb ''investigate'' means to follow up by patient inquiry or observation; to inquire and examine with systematic attention to detail and relation.   (Webster's New International Dictionary, second edition; *People* v. *One 1941 Chevrolet Coupe,* 113 Cal.App.2d 578 at 582 [248 P.2d 786].)